## STANDARD OIL COMPANY ET AL. v. W. T. HUNT, F. S. ROYSTER GUANO COMPANY, ET AL.

(Filed 22 January, 1924.)

**1. Evidence—Nonsuit.**

On a motion to nonsuit, the evidence is to be taken in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable intendment and reasonable inference to be drawn therefrom. C. S., 567.

**2. Fraud—Definition—Equity.**

Fraud, actual and constructive, is so multiform as to admit of no general rules or definitions, and it is no part of equity doctrine to define it.

**3. Same — Debtor and Creditor — Mortgages — Judgments — Unsecured Creditors.**

> Evidence in this case that one conducting a small store gave certain creditors of his mercantile business mortgages in comparatively large sums to secure a preëxisting debt, and that while the store had been closed for some time, a fire occurred, etc., *is held* sufficient in a judgment creditor's suit to set aside the mortgages as to the unsecured debts, and show that they had been given and received with the intent to defraud those who were not thus secured in their debts against the owner.

APPEAL by defendant, F. S. Royster Guano Company, from *Lane, J.,* at Spring Term, 1923, of CLAY.

Civil action in the nature of a judgment creditors' bill brought to set aside two mortgages, one given to F. S. Royster Guano Company and the other to Cherokee Hardware Company by W. T. Hunt and wife, with the intent, it is alleged, to hinder, delay and defraud Hunt's other creditors, plaintiffs herein.

Upon denial of plaintiffs' allegations and issues joined, there was a verdict and judgment in favor of plaintiffs, from which the defendant, F. S. Royster Guano Company, appealed.

*John H. Dillard, Anderson & Gray, and Thos. J. Hill for plaintiffs.*
*D. Witherspoon and Moody & Moody for Royster Guano Company.*

STACY, J. The single question presented by this appeal arises upon the appellant's demurrer to the evidence and motion for judgment as of nonsuit made under C. S., 567. Viewing the evidence in its most favorable light for the plaintiffs, the accepted position on a motion of this kind, we find the following facts sufficiently established, or as reasonable inferences to be drawn from the testimony:

1. From 1919 to 1922 W. T. Hunt was engaged in the mercantile business at Hayesville, N. C. He carried a small stock of general merchandise, variously estimated to be worth from $1,000 to $2,500, and he also ran a gasoline filling station in connection with his store. This was of small value.

2. On 31 March, 1921, Hunt and wife executed to F. S. Royster Guano Company a mortgage to secure the payment of a preëxisting debt amounting to $3,950.97.

3. On 6 April, 1921, Hunt and wife executed a deed of trust in favor of the Cherokee Hardware Company to secure a preëxisting debt amounting to $704.69.

4. On 8 April, 1921, Hunt executed to W. L. Matheson, one of the plaintiffs herein, a note for $1,050, secured by mortgage on a town lot worth from $300 to $500, stating at the time that he wanted to secure Matheson as far as he was able to do so.

5. It was admitted on the hearing that, at the time of the execution of these mortgages, W. T. Hunt was indebted to the plaintiffs as follows: To the Standard Oil Company in the sum of $203.40, with interest from date until paid; to W. L. Matheson, the sum of $1,050, with interest from 24 June, 1921, until paid; to C. M. McClung & Co. in the sum of $468.37, with interest from 31 May, 1921, until paid, and to W. N. Moore, guardian of Morris Moore, an infant, in the sum of $750 on which $100 was paid 10 January, 1922, with interest on said $750 from 25 October, 1919, till paid, and to the Clay County Bank in the sum of $524.09, with interest from 20 June, 1922, until paid. There was further evidence tending to show that Hunt was insolvent and unable to meet his obligations at this time.

6. W. T. Hunt remained in business for a year or more after the execution of the mortgage above mentioned, when his store was destroyed by fire. His former partner testified: "A great deal of the time Hunt's store was closed before the fire. The filling station he had at his hardware store he was not using at the time of the fire."

Upon these, the facts chiefly pertinent, we think the jury was amply justified in finding, as they did, that the mortgages in question were given with intent to hinder, delay and defraud the plaintiffs herein, and that the F. S. Royster Guano Company and Cherokee Hardware Company had knowledge of such purpose and participated therein. On a motion to nonsuit, the evidence is to be taken in its most favorable light for the plaintiffs, and "they are entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom." *Christman v. Hilliard,* 167 N. C., p. 6.

Fraud, actual and constructive, is so multiform as to admit of no rules or definitions. "It is, indeed, a part of equity doctrine not to define it," says *Lord Hardwicke,* "lest the craft of men should find a way of committing fraud which might escape such a rule or definition." Equity, therefore, will not permit "annihilation by definition," but it leaves the way open to punish frauds and to redress wrongs perpetrated by means of them in whatever form they may appear. The presence of fraud, when resorted to by an adroit and crafty person, is at times exceedingly difficult to detect. Indeed, the more skillful and cunning the accused, the less plainly defined are the badges which usually denote it. Under such conditions, the inferences legitimately deducible from all the surrounding circumstances furnish, in the absence of direct evidence, and often in the teeth of positive testimony to the contrary, ample ground for concluding that fraud has been resorted to and practiced by one or more of the parties. *Grove v. Spike,* 72 Md., 300.

The case was properly submitted to the jury, and there is no error appearing on the record. The verdict and judgment will be upheld.

No error.