MELVIN G. JOHNSON AND WIFE, AUDREY VIRGINIA JOHNSON v. BEVERLY-HANKS & ASSOCIATES, INC., HILL-GATEWOOD REALTY, INC., JAMES H. GORDON, JOHN R. KEFGEN AND WIFE, DOROTHY E. KEFGEN, ORKIN EXTERMINATING COMPANY, INC., THOMAS W. SUMNER, DONALD O. THOMPSON, AND WYNELLE M. THOMPSON

No. 90A90

(Filed 7 February 1991)

1. **Fraud § 12.1 (NCI3d); Unfair Competition § 1 (NCI3d)— sale of house—summary judgment for defendant builder—no error**

   The trial court did not err by granting defendant Donald Thompson's motion for summary judgment as to allegations of fraud and unfair or deceptive practices arising from the sale of a house where plaintiffs produced no evidence that this defendant (the builder) made any false representation as to a material past or existing fact and no facts were presented by plaintiff to show any immoral, oppressive, unscrupulous, or deceptive conduct on the part of this defendant.

   **Am Jur 2d, Fraud and Deceit §§ 108, 158; Summary Judgment §§ 26, 27.**

2. **Fraud § 12.1 (NCI3d)— sale of house—fraud—summary judgment for seller—no error**

   The trial court did not err by granting summary judgment for defendant Dorothy Kefgen (the seller) on claims of fraud arising from the sale of a house where plaintiffs produced a forecast of some evidence of misrepresentation by Mrs. Kefgen about the condition of the house and that the house did not have termites, but did not bring forth any evidence which tends to show that Mrs. Kefgen knowingly made false misrepresentations with intent to deceive the plaintiffs.

   **Am Jur 2d, Fraud and Deceit §§ 108, 158; Summary Judgment §§ 26, 27.**

   **Duty of vendor of real estate to give purchaser information as to termite infestation. 22 ALR3d 972.**

3. **Fraud § 12.1 (NCI3d); Unfair Competition § 1 (NCI3d)— sale of house—fraud and unfair practice—summary judgment for realtor—error**

   The trial court erred in granting summary judgment for defendants Wynelle Thompson (the realtor who showed the

JOHNSON v. BEVERLY-HANKS & ASSOC.

[328 N.C. 202 (1991)]

house) and Beverly-Hanks (her real estate agency) on claims for fraud and unfair or deceptive practices arising from the sale of a house where the record reflects that plaintiffs discussed with Wynelle Thompson numerous times the need to have an independent inspection of the house before closing; plaintiffs provided evidence that they would not have closed on the house had they not received an independent investigation of the general soundness of the house; Mrs. Thompson told · plaintiffs she would engage the services of a building inspector and asked the builder to specify the structural integrity of the house; and, while Mrs. Thompson testified that she did not know that the building inspector had previously inspected the house for the Kefgens (sellers), plaintiffs provided evidence tending to show that Mrs. Thompson had at minimum aided in engaging the inspector and that he was hired because he had inspected the house before.

**Am Jur 2d, Fraud and Deceit §§ 108, 158; Summary Judgment §§ 26, 27.**

**Real estate broker's liability to purchaser for misrepresentation or nondisclosure of physical defects in property sold. 46 ALR4th 546.**

APPEAL by plaintiffs pursuant to N.C.G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals, 97 N.C. App. 335, 388 S.E.2d 584 (1990), affirming summary judgments for defendants entered by *Lewis (Robert D.), J.,* on 12 July 1988, 14 September 1988, 15 September 1988, and 25 September 1988 in Superior Court, HENDERSON County. Heard in the Supreme Court 11 October 1990.

*David Gantt for plaintiff-appellants.*

*Womble Carlyle Sandridge & Rice, by James R. Morgan, Jr., for defendant-appellees Beverly-Hanks & Associates and Wynelle M. Thompson.*

*Prince, Youngblood, Massagee & Jackson, by Boyd B. Massagee, Jr., and Sharon B. Ellis, for defendant-appellees Donald O. Thompson and Estate of Dorothy E. Kefgen.*

*Lacy H. Thornburg, Attorney General, by James C. Gulick, Special Deputy Attorney General, and David N. Kirkman, Assistant Attorney General, Consumer Protection Section, amicus curiae.*

JOHNSON v. BEVERLY-HANKS & ASSOC.

[328 N.C. 202 (1991)]

MEYER, Justice.

By this lawsuit, plaintiffs sought compensatory and punitive damages for defendants' alleged fraud, unfair or deceptive acts or practices in or affecting commerce, and civil conspiracy arising in the sale of a house. The claims of alleged civil conspiracy are not before this Court on appeal.

After this Court's review of the record, our appraisal of the facts found in the documents and depositions elicited during discovery and presented in evidence for the trial court's review upon the motion for summary judgment differs somewhat from the facts stated in the opinion by the Court of Appeals. The forecast of evidence tended to show the following: John and Dorothy Kefgen, both now deceased, signed a listing contract with listing agent Thomas A. Sumner of Hill-Gatewood Realty, Inc., to list their home in Hendersonville, North Carolina, and to place the listing in the Multiple Listing Service. Plaintiffs, Melvin and Audrey Johnson, were shown the house on 18 April 1986 by Wynelle M. Thompson, a real estate broker with Beverly-Hanks & Associates, Inc. ("Beverly-Hanks"), and signed an offer to purchase that same day.

Plaintiffs returned to the house on 20 April 1986 for a closer inspection. While viewing the house, plaintiffs noticed peeling paint at the lowest level of the house, moisture coming through a wall, bad cracks, and a bulge in the rear wall of the house. Ms. Thompson was informed of the defects, and she indicated that she would have a building inspector examine the house and the builder verify its structural integrity.

After stating that she had discussed the Kefgen house with Donald O. Thompson, the builder, Ms. Thompson informed the plaintiffs that (1) the bulge in the wall was the result of settling, and (2) the house was structurally in good shape. In spite of the defects discovered by plaintiffs, they went to the real estate closing on 5 August 1986. Prior to the closing, plaintiffs received, *inter alia*, the following signed statements:

> (1) Two statements by Wynelle Thompson indicating that (a) a private inspector who looked at the house commented that he would not expect any further shifting, (b) the bulge in the rear wall occurred as a result of settling, (c) a door to the crawl space under the house as well as three vents

had been installed, (d) a termite inspection would be conducted prior to closing, and (e) "[e]verything look[ed] good."

(2) A memorandum by the builder, Donald Thompson, indicating that the concrete slab in the basement is thicker than normal and contains wire mesh and one-half inch Rebar installed at right ángles.

(3) A letter from Attorney James E. Creekman, indicating that he represented Mr. and Mrs. Kefgen. He presented with his letter another statement from Donald Thompson stating that the wooden forms used in the construction of the foundation were inadvertently left in the crawl space beneath the house and could be removed, as they are not necessary to the structural integrity of the building.

(4) A letter from James H. Gordon of the Carolina Home Inspection Service indicating observations upon a limited inspection of specifically requested items: (a) northwest bedroom heat, (b) basement wall moisture, (c) brick mortar joint crack at southwest exterior corner, (d) termite damage at garage door jamb and frame, and (e) reinforced concrete slab. His observations indicated, among other things, some concern whether the concrete slab is designed and built to carry the concentrated loads transmitted from the center posts along the basement and garage areas above, but found that, during his limited inspection, it was impossible to determine if the structural concrete had been designed adequately.

Plaintiffs purchased the house on 5 August 1986 and shortly thereafter moved in. After moving into the house, plaintiffs consulted and retained the services of an engineering firm. A structural engineer inspected the premises and concluded that the house was not safe for occupancy due to the following reasons:

(1) Portions of the basement foundation walls were unstable and could fail with little or no warning.

(2) A concrete masonry wall beneath the left rear garage door was found to be bearing on earth where no concrete foundation existed.

(3) Cracks were found to exist in the basement floor slab. The basement slab was found to be spanning distances greater

than those recommended for a four inch thick concrete slab based on deflection criteria.

(4) The cracked, spanning basement slab was presently supporting the center steel columns, which support a portion of the upper floor and possibly 50% of the roof.

(5) Cracking and deflected surface conditions noted in the asphalt paving indicated settlement of the supporting subgrade adjacent to the home.

(6) Steel "jack post" type columns which supported the upper level of the residence were found not to be secured to the basement floor.

(7) Upper level wood floor joists were found to be unsecured atop the concrete masonry walls, and no wood plate or anchor bolts were found.

Upon receiving an estimate that it would cost approximately $70,000 to repair the structural damage, plaintiffs contacted all parties involved in the matter to see if each would contribute to the repairs. None of the parties responded, and plaintiffs filed their complaint in this action.

The trial court determined that there were no genuine issues of material fact as to each defendant for each of the three claims and entered summary judgment in favor of all defendants. The Court of Appeals affirmed, holding that the trial court did not err in granting defendants' motions for summary judgment. *Johnson v. Beverly-Hanks & Assoc.*, 97 N.C. App. 335, 388 S.E.2d 584 (1990).

The issue on appeal is whether the trial court erred in granting motions for summary judgment for defendants Donald Thompson, Dorothy Kefgen, Wynelle Thompson, and Beverly-Hanks. The question we must address in this case is whether there exists any genuine issue of material fact concerning defendants' alleged fraud or unfair or deceptive practices in selling this house to the plaintiffs. We hold that the forecast of the evidence as to defendants Donald Thompson and Dorothy Kefgen, when viewed in the light most favorable to the plaintiffs, did not raise genuine issues of material fact. We hold further, however, that the forecast of the evidence as to defendants Wynelle Thompson and Beverly-Hanks, when viewed in the light most favorable to the plaintiffs, did raise

**JOHNSON v. BEVERLY-HANKS & ASSOC.**

[328 N.C. 202 (1991)]

genuine issues of material fact and that it was improper for the trial court to grant these defendants' motions for summary judgment.

This Court notes at the outset that the assignments of error raised by the plaintiffs are premised upon the same theories of recovery for fraud or for unfair or deceptive practices. The applicable rules of law do not differ with respect to each defendant, and therefore, a discussion of these rules, initially, will govern the following analysis.

It is well settled that a party moving for summary judgment is entitled to such judgment if the party can show, through pleadings, depositions, and affidavits, that there is no genuine issue of material fact requiring a trial and that the party is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56 (1983); *Beckwith v. Llewellyn*, 326 N.C. 569, 391 S.E.2d 189, *reh'g denied*, 327 N.C. 146, 394 S.E.2d 168 (1990); *Watts v. Cumberland County Hosp. System*, 317 N.C. 110, 343 S.E.2d 879 (1986). The party who moves for summary judgment has the initial burden to prove that there are no disputed factual issues. *Aetna Casualty & Surety Co. v. Nationwide Mut. Ins. Co.*, 326 N.C. 771, 392 S.E.2d 377 (1990). Once the moving party has met this initial burden, the nonmoving party must produce a forecast of evidence demonstrating that he or she will be able to make out a prima facie case at trial. *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 376 S.E.2d 425 (1989). Our initial inquiry, then, is whether there was a disputed factual issue raised concerning the existence of fraud or unfair or deceptive practices as to each defendant.

I. DONALD O. THOMPSON

[1] Plaintiffs' sole contention is that the trial court erred in granting defendant-builder Donald Thompson's motion for summary judgment as to allegations of fraud and unfair or deceptive practices. We disagree.

Plaintiffs' complaint sought relief for fraud and unfair or deceptive practices. To make out an actionable case of fraud, plaintiffs must establish that there existed a

(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Ragsdale v. Kennedy,* 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). The undisputed facts reflect that Donald Thompson built the residence of which plaintiffs complain. Mr. Thompson submitted two written statements attesting (1) to the specifications of the concrete slab in the basement and (2) that the wooden forms in the crawl space could be removed without affecting the structural integrity of the house. Here, plaintiffs have not produced any evidence that defendant Donald Thompson made any false representation as to a material past or existing fact.

Although Donald Thompson did not recall ever having spoken to her, during discovery Wynelle Thompson, the real estate broker, testified that Mr. Thompson told her that the house was "structurally in good shape" and that the bulge in the wall "occurred sometime ago as a result of settling" and was "not going to be a problem." While it was reported in the Court of Appeals decision that the builder himself testified to this effect, this Court is unable to verify from the record that the builder so testified. Even so, this testimony alone by Ms. Thompson is not sufficient to make out a prima facie case of fraud against Mr. Thompson, as no facts were presented by plaintiffs to show any wrongful conduct on his part. The trial court properly granted this defendant's motion for summary judgment as to the fraud allegation, as plaintiffs failed to establish that there existed a genuine issue of material fact with respect to their claim of fraud. Therefore, the result reached by the Court of Appeals affirming the grant of summary judgment in favor of the defendant-builder was correct.

Plaintiffs' second claim for relief is based upon unfair or deceptive practices. N.C.G.S. § 75-1.1(a) declares unlawful "unfair or deceptive acts or practices in or affecting commerce." As a general rule, "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Insurance Co.,* 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980), *rev'd on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc.,* 323 N.C. 559, 374 S.E.2d 385 (1988). If a party engages in conduct that results in an inequitable assertion of his power or position, he has committed an unfair act or practice. *Id.* at 264, 266 S.E.2d at 622. No facts were presented by plaintiff to show any immoral, oppressive, unscrupulous, or deceptive conduct on the part of Donald Thompson. Thus, plaintiffs have failed to establish that there exists a genuine issue of material fact with

respect to their claim of unfair or deceptive practices as to Donald Thompson. The trial court, therefore, properly granted this defendant's motion for summary judgment with respect to the allegation of unfair or deceptive practices.

## II. DOROTHY E. KEFGEN

[2] As a matter of clarity, this Court notes that plaintiffs initially brought a cause of action for fraud, unfair or deceptive practices, and civil conspiracy against both John and Dorothy Kefgen. Due to John Kefgen's death, his wife initially defended this action. However, prior to oral arguments before this Court, as a result of defendant Dorothy Kefgen's death, the coexecutors of her estate now defend, as a motion for substitution of party was allowed. The claims for alleged unfair or deceptive practices or civil conspiracy against Dorothy Kefgen are not on appeal before this Court.

Plaintiffs bear the burden of proving all elements of a cause of action for fraud in their forecast of the evidence. The record indicates that the Kefgens placed their house on the market at some point prior to 18 April 1986. The record further indicates that Mrs. Kefgen was present on 20 April 1986 when plaintiffs returned to the house and made inquiries as to specific defects. The plaintiffs did produce a forecast of some evidence of misrepresentations by Mrs. Kefgen to them about the "excellent shape" of the house and that the house did not have termites. From these statements, plaintiffs allege that Mrs. Kefgen committed fraud. They, however, have not brought forth any evidence which tends to show that Mrs. Kefgen *knowingly* made false representations *with the intent to deceive* the plaintiffs.

Though the record was voluminous, the trial court was unable to find any representations or omissions made by Dorothy Kefgen that rose to the level of fraud. Therefore, the trial court correctly concluded that no triable issues of fact existed on plaintiffs' claim of fraud and properly granted Dorothy Kefgen's motion for summary judgment.

## III. WYNELLE THOMPSON AND BEVERLY-HANKS

[3] Plaintiffs contend that the trial court erred in granting the motions for summary judgment as to defendants Wynelle Thompson and Beverly-Hanks. The Court of Appeals held that the trial court properly granted defendants' motions for summary judgment as to the fraud allegation because "plaintiffs have not produced any

evidence that defendant, Wynelle Thompson, or any representative of defendant, Beverly-Hanks, made any false representations as to a material past or existing fact." *Johnson v. Beverly-Hanks & Assoc.*, 97 N.C. App. at 342, 388 S.E.2d at 588. We disagree.

This Court finds that plaintiffs' forecast of evidence as to Wynelle Thompson and therefore her employer, Beverly-Hanks, was sufficient to raise an issue of material fact as to the fraudulent concealment of facts which misled the plaintiffs into purchasing the Kefgen house.

> A broker who makes fraudulent misrepresentations or *who conceals a material fact* when there is a duty to speak to a prospective purchaser in connection with the sale of the principal's property is personally liable to the purchaser notwithstanding that the broker was acting in the capacity of agent for the seller.

P. Hetrick & J. McLaughlin, *Webster's Real Estate Law in North Carolina* § 132, at 165 (3d ed. 1988) (footnote omitted) (emphasis added). A broker has a duty not to conceal from the purchasers any material facts and to make full and open disclosure of all such information. *Spence v. Spaulding and Perkins, Ltd.*, 82 N.C. App. 665, 347 S.E.2d 864 (1986); *see also Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 225 S.E.2d 557 (1976).

The record reflects that, numerous times, plaintiffs had discussed with Wynelle Thompson the need to have an independent inspection of the Kefgen house before closing. The plaintiffs provided evidence that they would not have closed on the house had they not received an *independent* investigation of the general soundness of the house. The evidence tends to show that Ms. Thompson told the plaintiffs that, since they were living in Michigan at the time, she would engage the services of a building inspector and ask the builder to verify the structural integrity of the house.

Plaintiffs' evidence showed that, to satisfy the plaintiffs' demand, James H. Gordon, a building inspector, conducted a limited inspection at the house of five specifically requested items. The record is unclear as to whether Ms. Thompson placed the telephone call to employ Mr. Gordon. Mr. Gordon first testified that a woman called him to request an inspection of five specific areas of the house and asked if he was the one who had previously been to the house. Later, Mr. Gordon denied ever having received a telephone

JOHNSON v. BEVERLY-HANKS & ASSOC.

[328 N.C. 202 (1991)]

call from someone named Wynelle Thompson. However, these five items were the exact same areas of concern that the plaintiffs had related to Ms. Thompson. Even though Ms. Thompson stated that she did not recall placing the exact telephone call to Mr. Gordon, her own testimony repeatedly acknowledged her part in recommending Mr. Gordon to inspect the house. Ms. Thompson never mentioned to plaintiffs that Mr. Gordon had earlier inspected the house for the Kefgens at the request of Thomas Sumner, the listing agent during this transaction. Mr. Gordon concluded at the earlier inspection for the Kefgens that the house required an additional investigation by a structural engineer. Therefore, it is arguable that the inspection by Mr. Gordon for the plaintiffs was not a neutral, independent investigation. The plaintiffs relied on Wynelle Thompson's judgment in selecting Mr. Gordon as an independent, objective inspector.

The evidence presented for the trial court's review upon the motions for summary judgment as to the fraud allegation concerning Wynelle Thompson and her employer is thus conflicting and presents a genuine issue as to a material fact. Wynelle Thompson testified that she did not know that Mr. Gordon had previously inspected the house for the Kefgens, but the plaintiffs countered by producing evidence tending to show that she had, at the minimum, aided in engaging Mr. Gordon's services and that he was hired because he had inspected the house before. As defendants Wynelle Thompson and Beverly-Hanks have not shown that they were entitled to judgment as a matter of law, summary judgment as to these two defendants was improperly granted by the trial court.

In plaintiffs' second claim for relief as to these two defendants, the Court of Appeals held that the trial court properly granted defendants' motion for summary judgment with respect to the unfair or deceptive practices allegation because "[t]he forecast of the evidence [did] not reveal any oppressive, unscrupulous, or deceptive conduct on the part of Wynelle Thompson or any representative of Beverly-Hanks." *Johnson v. Beverly-Hanks & Assoc.*, 97 N.C. App. at 342, 388 S.E.2d at 588. We disagree.

This Court finds that the record reflects conflicting evidence as to the unfair or deceptive practices claim against Wynelle Thompson and Beverly-Hanks. Wynelle Thompson's representations and communications to the plaintiffs, as discussed above under the fraud count, could also tend to prove that Ms. Thompson was

involved in a deceptive act or practice in or affecting commerce. *Powell v. Wold*, 88 N.C. App. 61, 362 S.E.2d 796 (1987) (when fraud is proven, a violation of the prohibition of unfair and deceptive practices necessarily follows). Therefore, summary judgment was improperly granted as to defendants Wynelle Thompson and Beverly-Hanks.

For the reasons stated herein, we hold that the trial court properly granted motions for summary judgment in favor of defendants Donald O. Thompson and Dorothy E. Kefgen and that the trial court erred in granting motions for summary judgment for Wynelle M. Thompson and Beverly-Hanks & Associates, Inc. Accordingly, there is, as the trial judge concluded, no genuine issue as to any material fact of fraud or unfair or deceptive practices as to defendants Donald Thompson and Dorothy Kefgen, and they were entitled to judgment in their favor as a matter of law. N.C.G.S. § 1A-1, Rule 56 (1983). The grant of summary judgment as to these two defendants entered by the trial court was proper. However, the trial court erred in concluding that there was no genuine issue as to any material fact of fraud or unfair or deceptive practices as to defendants Wynelle Thompson and Beverly-Hanks.

The decision of the Court of Appeals is affirmed as to defendants Donald O. Thompson and Dorothy E. Kefgen and reversed as to defendants Wynelle M. Thompson and Beverly-Hanks & Associates, Inc., and the case is remanded to that court for further remand to the Superior Court, Henderson County, with instructions that the entry of summary judgment in favor of Wynelle Thompson and Beverly-Hanks be vacated and for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part and remanded.